Michael C. Douglass (SBN 208442)
*mcd@lydecker.com*
Megan T. Ortiz (SBN 340417)
*mto@lydecker.com*
**LYDECKER LLP**

  Mailing Address:
1221 Brickell Ave., 19th Floor
Miami, Florida 33131

  Street Address:
445 S. Figueroa St., Suite 3100
Los Angeles, CA 90071
Telephone:(213) 314-0126
Facsimile: (213) 293-4425

Attorneys for Defendant,
MANUEL RAMOS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WATCH RAPPORT, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>MANUEL RAMOS, DOES 1-20, INCLUSIVE,<br><br>                    Defendants.<br>———————————————<br>MANUEL RAMOS,<br><br>                    Counter-Claimant,<br><br>v.<br><br>WATCH RAPPORT, LLC.<br><br>                    Counter-Defendant. | Case No:  2:21-CV-06395-DSF-AS<br><br>**DEFENDANT MANUEL RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION (FED. R. CIV. P. 56)**<br><br>**Date:**  June 27, 2022<br>**Time:** 1:30 p.m.<br>**Judge**: Hon. Daniel S. Fischer<br>**Courtroom:** 7C |

///

///

///

**TO THE HONORABLE COURT AND TO ALL PARTIES:**

PLEASE TAKE NOTICE that on **June 27, 2022** at **1:30 p.m.**, or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Daniel S. Fischer located in Courtroom 7C of the United States Courthouse, 312 North Spring Street, Los Angeles, California 90012, Defendant MANUEL RAMOS will and hereby does move for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, with regard to Plaintiff's interpleader cause of action and Mr. Ramos' CLRA cause of action.

This Motion is based on the accompanying Memorandum of Points and Authorities, the concurrently filed the Declarations of Manuel Ramos, Megan T. Ortiz, and Michael C. Douglass, and on such oral argument and evidence that may be presented at the hearing.  This Motion is made following the conference of counsel pursuant to Central District L.R. 7-3 which took place between May 2 through May 9, 2022 via a series of email exchanges, as affirmed by the Declaration of Michael C. Douglass.

Dated:      May 11, 2022

                              **LYDECKER LLP**

                               By: _Megan Ortiz_____
                               Michael C. Douglass
                               Megan T. Ortiz
                               Attorneys for Defendant/Counter-claimant,
                               MANUEL RAMOS

# **Table of Contents**

Memorandum of Points and Authorities…………………………….…………..3

I.     Introduction……………………………………………….....3

II.    Background…………………………………………….……..3

III.   Summary Judgment Standard…………………………………..8

IV.    Legal Argument…………………………………………...9

    A. Mr. Ramos is Entitled to Summary Judgment Regarding Watch Rapport's Interpleader Cause of Action……………………...9

        1. This Case Does Not Meet the Requirements for Statutory Interpleader………………………………...……………10

        2. This Dispute Meets the Requirements for Rule 22 Interpleader………………………………………………...10

        3.Mr. Ramos is Entitled to Recover the $66,608.66 Stake……..11

    B. Mr. Ramos is Entitled to Summary Judgment Regarding Watch Rapport's Violation of the Consumer Legal Remedies Act…….....13

        1.Watch Rapport Violated CLRA Section 1770(a)(14)……....13

        2.Watch Rapport Violated CLRA Section 1770(a)(19)………..16

        3.Watch Rapport Violated CLRA Section 1770(a)(5)…………18

        4.  Mr. Ramos is Entitled to Attorney's Fees under California's Consumer Legal Remedies Act………………………………18

V.     Conclusion……………………………………………………19

1

## **Table of Authorities**

2

*Cases:*

3

4

*AmGuard Ins. Co. v. SG Patel & Sons II LLC,*
  999 F.3d 238, 247 (4th Cir. 2021)……………………………………………11

5

6

*Anderson v. Liberty Lobby Inc.,*
  477 U.S. 242, 255 (1986)……………………………..……………………9

7

8

*Asghari v. Volkswagen Group of America, Inc.,*
  42 F.Supp.3d 1306 (C.D. Cal. 2013)…………..………..………………13

9

10

*Barrett v. Apple Inc.,*
  523 F. Supp. 3d 1132, 1153 (N.D. Cal. 2021)……………………………..17

11

12

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ………………….…..……………………………....8

13

14

*Benson v. S. Cal. Auto Sales Inc.,*
  239 Cal.App.4th 1198 (2015)………………………………………..……19

15

16

*Field v. United States,*
  424 F. Supp. 3d 904, 908 (E.D. Cal. 2019)…………………..……………10

17

18

*Fitzpatrick v. City of Atlanta,*
  2 F.3d 1112, 1116 (11th Cir.1993)…………………………..………...9

19

20

*Gelfgren v. Republic Nat. Life Ins. Co.,*
  680 F.2d 79, 81 (9th Cir. 1982)……………………………….….…..….12

21

22

*Gonzales v. CarMax Auto Superstores, LLC,*
  845 F.3d 916, 917–18 (9th Cir. 2017)………………………………..….19

23

24

*In re 1563 28th Ave., San Francisco, CA 94112,*
  333 F.R.D. 630, 635. (N.D. Cal. 2019)…………………..…………..………14

25

26

*KRL v. Moore,*
  384 F. 3d 1105, 1110 (9th Cir. 2004)……………………...…………………..9

27

28

*Lee v. West Coast Life Insurance,*

688 F.3d 1004, 1014 (9th Cir. 2012)……………………………..………9

*Lincoln Nat'l Life Ins. Co. v. Graham,*
   No. 2:12-CV-2177-SVW-RZ, 2013 WL 12132047, (C.D. Cal. Jan. 3, 2013)…………………………………………………………………12

*Meyer v. T-Mobile USA Inc.,*
   836 F. Supp. 2d 994, 1001 (N.D. Cal. 2011)………………………...…16

*Michelman v. Lincoln Nat. Life Ins. Co.,*
   685 F.3d 887, 894 (9th Cir. 2012)……………………….………………...12

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007, 1016 (9th Cir. 2020)……………………………...……13

*Morgan v. Harmonix Music Sys., Inc.,*
   No. C08-5211BZ, 2009 WL 2031765, (N.D. Cal. July 7, 2009)..………...18

*NYLife Distributors, Inc. v. Adherence Grp., Inc.,*
   72 F.3d 371, 375 (3d Cir. 1995)………..…………………………11

*Poublon v. C.H. Robinson Co.,*
   846 F.3d 1251, 1261 (9th Cir. 2017)……………………………….…...17

*Richter v. CC-Palo Alto, Inc.,*
   176 F. Supp. 3d 877, 885 (N.D. Cal. 2016)…...........................……13

*State Farm Fire & Cas. Co. v. Tashire,*
   386 U.S. 523, 530 (1967)……………………………………………10

*Steroid Hormone Prod. Cases,*
   181 Cal. App. 4th 145, 149 (2010)………………..……………….…...14

*Tietsworth v. Sears,*
   720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010)………………..…………17

*United California Bank v. Fadel,*
   482 F. 2d 274, 275 (9th Cir. 1973)………………………………………11

***Statutes:***

Fed. R. Civ. P. 56(a)……………………………………………..…...8

Fed. R. Civ. P. 56(c)……………………………………………....8

28 U.S.C. § 1332……………………………………………11

28 U.S.C. § 1335(a)(1)……………………………………………10

Cal. Civ. Code § 1770……………………………………………....17

Cal. Civ. Code § 1770(a)(5)……………………………………………18

Cal. Civ. Code § 1770(a)(14)……………………………………………13

Cal. Civ. Code § 1770(a)(19)……………………………………………16

Cal. Civ. Code § 1780(e)……………………………………………19

Cal. Civ. Code § 1782(b)……………………………………………18

**DEFENDANT RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Watch Rapport, LLC is an online seller of what it advertises as high-end watches. Plaintiff touts its business as a marketplace of luxury watches along with buyer assurance provisions and a money-back-guarantee. This case involves Plaintiff and Counter-claimant Manuel Ramos' attempts to purchase two watches via Plaintiff's website in late 2020. Notwithstanding Mr. Ramos' payments totaling $66,608.66, Plaintiff has never given him the watches he purchased or returned Mr. Ramos' funds.

Instead, Plaintiff filed the instant lawsuit, contending that a genuine dispute exists as to the rightful recipient of the subject funds. SUF No. 32. In reality, there is no dispute regarding the rightful owner of the funds and, indeed, Plaintiff tacitly concedes the point because it identifies no other individual defendants with a potential claim to the subject funds. Mr. Ramos is entitled to recover the funds he paid to Watch Rapport immediately. Additionally, in light of Watch Rapport's deceptive practices, Mr. Ramos is entitled to summary judgment as to his claims of violations of the California Consumer Legal Remedies Act.

## II.    BACKGROUND

Watch Rapport is an online seller of high-end and luxury watches. According to its website, an online consumer selects the watch he wishes to purchase and after tendering payment, Watch Rapport then sources the watch to send to the consumer. Statement of Uncontroverted Facts (SUF) No. 1. Watch Rapport operates under certain policies and procedures that it lists on its website, several of which are applicable to this motion.

Watch Rapport's Refund and Return Policy dictates:

///

///

///

Refunds:

> Due to the nature of the inspection process, please be advised that approval generally takes up to 10 days. Once approved, your request for a refund will be promptly processed. All returns will be charged a 10% restocking fee, except if your return is because the item was:

> Below are the list of options that are qualified for refunds and void any restocking fees.

> Eligible Refunds:
> - Not as described
> - Damaged
> - Replica or fake
> - Unfulfilled transaction (terms may apply)
> - Voluntary cancellation
> - Transaction cancellation
> - Failed inspection
> - Item availability
> - Shipping & delivery time frames

SUF No. 2.

Refund Terms, Order Cancellation:

> All orders that are cancelled or cannot be fulfilled will result in a refund.

SUF No. 3.

Refund Terms, Refund Processing:

> Refunds are usually processed within 24-48 hours by Watch Rapport. Depending on your financial institution and whether the refund will be initiated domestically or internationally, it may take up to 10 business days (Not including weekends or bank holidays) to credit to your account or appear on your statement. Refunds are usually returned to the original payment method with the exception of Cryptocurrency payments. Any Cryptocurrency payments, or ("Coinbase Payments") will be refunded only via bank wire transfer.

SUF No. 4.

Watch Rapport's Wire Transfer Recall, Processing Transfer Request, as it relates to its compliance with the United States Treasury's Office of Foreign Assets Control ("OFAC"), reads in pertinent part (erroneously listed as Wire Transfer Agreement in Complaint):

///

Watch Rapport will comply with the US Treasury's Office of Foreign Assets Control (OFAC). If any transfer request is to an entity or individual listed on OFAC's list of Specially Designated Nationals and Blocked Persons, by law, Watch Rapport shall not complete the transfer and shall "block or hold" the funds until such time OFAC issues a written release to Watch Rapport. It is the sole responsibility of the Customer to contact OFAC to obtain a valid written release. The Customer understands and agrees that if a written release is not provided, Watch Rapport or the original receiving financial institution reserves the right to hold or block funds until the matter is resolved.

SUF No. 5.

Watch Rapport's Transaction Disclaimers dictates:

Any transaction that cannot be fulfilled is covered by our refund policy and money-back-guarantee.

SUF No. 6.

Watch Rapport's consumer Returns Frequently Asked Questions dictates:

If we cannot fulfill your order, we will either cancel your order and provide a full immediate refund, or provide a refund and leave the transaction open until we can find a replacement.

SUF No. 7.

Watch Rapport's Simple Refund Process, Money-Back-Guarantee dictates:

You can start a return or request a refund anytime during your order processing if you have no been provided with tracking information or proof of transit.

SUF No. 8.

///

Mr. Ramos first became aware of Watch Rapport's products and services through an internet search for high-end watch retailers. SUF No. 9. Given the significant expenses of high-end watches, Mr. Ramos was very concerned with Watch Rapport's refund and return policy. He read the policy and it was a major inducement to his decision to purchase expensive watches with Watch Rapport. SUF No. 10.

On October 21, 2020, via Watch Rapport's website, Mr. Ramos placed Order #1616 for a Rolex Chronograph Pre-Daytona 6238 watch (the "Daytona 6238") from Watch Rapport and agreed to pay $38,434.66. SUF No. 11. In an e-mail to Mr. Ramos confirming the order and stating that he chose the Layaway program with an initial down payment due of $9,608.66, Watch Rapport stated, "If WE cancel your order, you will receive a refund for all the payments you made towards your purchase in full." SUF No. 12. On October 27, 2020, Mr. Ramos wired his down payment of $9,608.66 to Watch Rapport toward the purchase price of the Daytona 6238. SUF No. 13.

On October 31, 2020, via Watch Rapport's website, Mr. Ramos placed a second order, Order #1674, for a Rolex UNIQUE Daytona 6262 Sigma O-T-Swiss-T-O watch (the "Daytona 6262") from Watch Rapport. SUF No. 14. On November 5, 2020, Mr. Ramos wired $57,000 to Watch Rapport as full payment for the Daytona 6262. SUF No. 15. On December 9, 2020, Mr. Ramos wired $29,226.20 to Watch Rapport representing the balance of the purchase price owed on first watch he purchased -- the Daytona 6238. SUF No. 16. Consequently, as of December 9, 2020, Mr. Ramos had tendered full payment for both of the watches he sought to purchase.

On January 29, 2021, Watch Rapport e-mailed Mr. Ramos and informed him that it needed additional identification documents to process his transaction, specifically two forms of valid identification and proof of current valid address. SUF No. 17. On January 31, 2021, Mr. Ramos e-mailed the requested

identification documents: (1) a copy of his passport, (2) a copy of his Dominican Republic government-issued identification, and (3) a copy of his utility bill. SUF No. 18. After more back and forth e-mails regarding Mr. Ramos's bank accounts, on February 2, 2021, Watch Rapport e-mailed him and said that his funds, regarding the first transaction, were being held by OFAC at the receiving bank. SUF No. 19.  He was told to contact OFAC directly to find out the status and the reason. SUF No. 20.

Upon further investigation, Mr. Ramos learned that the $29,226.20 wire transfer was frozen by OFAC and that further attention to that transaction would be required. Importantly, neither the initial down payment for the Daytona 6238 ($9,608.66) nor the full payment for the Daytona 6262 ($57,000) wire transfers were blocked; rather, those funds were issued to Watch Rapport and received in its bank account.

It appears that OFAC froze the second payment for the Daytona 6238 because an individual named Manuel Huerta Ramos, a resident of Chihuahua, Mexico is on the OFAC Specially Designated Nationals and Blocked Persons list. Defendant Manuel Ramos is not, and has never been, placed on the OFAC list. Manuel Huerta Ramos has a Mexico address, whereas Mr. Ramos does not. Manuel Huerta Ramos' date of birth is June 26, 1960. Defendant Manuel Ramos' date of birth is December 30, 1985. Mr. Ramos does not know that individual and they have never met. The two men have never spoken and have never corresponded with each other. The "Manuel Ramos" identified on the OFAC list is a complete stranger to Defendant Ramos. SUF No. 6.

On March 16, 2021, Mr. Ramos applied to OFAC for the release of the $29,226.20, and e-mailed Watch Rapport to advise that he had done so. SUF No. 22. Two days later, on March 18, 2021, OFAC e-mailed its acknowledgment of receipt of Mr. Ramos' application for the license. SUF No. 23. On March 26, 2021, ten days after Mr. Ramos submitted his OFAC license application, Bank of

**DEFENDANT RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

America released the $29,226.20 wire transfer that OFAC had frozen and it was returned to Mr. Ramos' account. SUF No. 24. On March 26, 2021, Mr. Ramos emailed Watch Rapport that Bank of America returned the $29,226.20 wire transfer to his account after receiving confirmation of OFAC's approval of my license. SUF No. 25. As of this date, OFAC's website confirms that Mr. Ramos' application for the license was "APPROVED". SUF No. 26.

The purportedly "disputed" funds that Watch Rapport is holding are not the funds that OFAC froze. Rather, Watch Rapport is holding the down payment for the first watch ($9,608.66) and the full payment for his second watch ($57,000). Plaintiff has never explained why it refuses to refund these sums to Mr. Ramos, given that neither of these transactions were subjected to OFAC inquiries.

## III.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment is a mechanism by which a court can dispose of all or part of a case without trial when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(a). In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court discussed the vital function of summary judgment as "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp.*, 477 U.S. at 323 (1986).

Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. at 323. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 255 (1986).

However, the non-moving party cannot point to mere allegations or denials contained in the pleadings and it is insufficient for the party opposing summary judgment to produce a mere "scintilla" of evidence. *Celotex Corp.*, at 252. Rather, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. *See KRL v. Moore*, 384 F. 3d 1105, 1110 (9th Cir. 2004).

## IV.   **LEGAL ARGUMENT**

### A.   **Mr. Ramos is Entitled to Summary Judgment Regarding Watch Rapport's Interpleader Cause of Action.**

"An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for [a] rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Lee v. West Coast Life Insurance*, 688 F.3d 1004, 1014 (9th Cir. 2012). "If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." *Id*. at 1009.

The first stage examines the propriety of interpleader in the current action. *In re 1563 28th Ave., San Francisco, CA 94112*, 333 F.R.D. 630, 635. (N.D. Cal.

2019). An interpleader action may be instituted by a party to resolve competing, inconsistent claims to a singular item of value, also known as a stake. The stakeholder must have a "good faith belief that there are or may be colorable competing claims to the stake', based on 'a real and reasonable fear of exposure to double liability." *Field v. United States*, 424 F. Supp. 3d 904, 908 (E.D. Cal. 2019).

### 1. This Case Does Not Meet the Requirements for Statutory Interpleader.

Statutory Interpleader requires that: (1) at least two claimants are diverse from each other, regardless of the interpleader plaintiff's citizenship; (2) the amount at issue is $500 or more; and (3) the plaintiff must deposit the property in question with the court. 28 U.S.C. § 1335(a)(1); *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) (evaluating minimal diversity of citizenship requirements for Statutory Interpleader actions). Here, Watch Rapport has asserted a Statutory Interpleader claim regarding the $66,608.66 fund, which satisfies the $500 requirement under § 1335. SUF No. 31.

However, Watch Rapport fails to satisfy the Statutory Interpleader requirement that there be two diverse claimants to the stake. In its Complaint, Watch Rapport alleges that "there exists a conflicting claim between the parties" as to the $66,608.66 fund it is holding but it does not assert an entitlement to the funds. Rather, Watch Rapport seeks an adjudication regarding its obligation to tender the funds to Mr. Ramos. SUF Nos. 32, 34. Additionally, Watch Rapport has failed to satisfy the jurisdictional requirement of depositing the disputed funds with the Court. Therefore, even though Watch Rapport has invoked Statutory Interpleader under § 1335, Watch Rapport has not met the requirements for a claim under this code provision.

### 2. This Dispute Meets the Requirement for Rule 22 Interpleader.

Although Watch Rapport improperly asserted a § 1335 Statutory

Interpleader cause of action, the Court is empowered to make a determination about the propriety of an interpleader action under either of the code provisions, even if the plaintiff has alleged interpleader under the incorrect provision. *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 247 (4th Cir. 2021) (holding that a district court "may consider a request for interpleader under *either* method … 'even if the complaint asserts the wrong one' as long as the court has jurisdiction under the selected provision"). Therefore, even though Statutory Interpleader is inapplicable under these facts, Mr. Ramos requests that this Court evaluate the merits of interpleader under Rule 22 interpleader rather than §1335.

Rule 22 interpleader claims brought under diversity jurisdiction require that: (1) the interpleader plaintiff be diverse from all claimants, although the claimants do not need to be diverse from one another; and (2) satisfaction of the amount in controversy requirement. 28 U.S.C. § 1332. Here, diversity jurisdiction is satisfied because there is complete diversity between the parties: Watch Rapport (Nevada) and Manuel Ramos (Florida and the Dominican Republic). SUF No. 29. The sum of Watch Rapport's breach of contract and interpleader causes of action also exceed the amount in controversy requirement for federal diversity jurisdiction. SUF No. 28. While Watch Rapport does not assert an actual entitlement to keep the funds, it is asserting an adverse claim in the sense that it contends that it has no immediate obligation to pay, pending this Court's adjudication of issues surrounding Watch Rapport's OFAC policy. SUF No. 32.

### 3.  **Mr. Ramos is Entitled to Recover the $66,608.66 Stake.**

During the second stage of an interpleader action, the Court determines the respective rights of the claimants to a stake. *United California Bank v. Fadel*, 482 F. 2d 274, 275 (9th Cir. 1973) (finding that an interpleader action is brought solely "to determine the ownership of funds"). At this point, the Court has already determined that interpleader is appropriate under the facts of the case and will adjudicate the existing claims to the stake, which "proceeds like any other action."

*NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 375 (3d Cir. 1995). Therefore, utilizing evidence from parties to the action, the Court will ultimately enter a judgment in favor of the claimant who is lawfully entitled to the stake. *Id.* When evaluating the merits of the claimant's rights, the Court may determine the entitlement of the funds based upon a motion to the Court. *See Lincoln Nat'l Life Ins. Co. v. Graham*, No. 2:12-CV-2177-SVW-RZ, 2013 WL 12132047, at 3 (C.D. Cal. Jan. 3, 2013) (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1714 at 627 (3d ed. 2001)) (explaining that a claimant's entitlement to a stake may be adjudicated on a summary judgment motion when there is no genuine issue of material fact).

Importantly, the Ninth Circuit has held that a stakeholder must have a good faith belief that there are colorable competing claims to a fund, and held that the Court may impose the costs of a suit on a stakeholder who interpleads in bad faith. *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012) (concluding that a stakeholder must demonstrate a "minimal threshold level of substantiality" of colorable competing claims to bring an interpleader action in good faith); *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) (holding that costs may be assessed against a stakeholder who interpleads in bad faith).

Here, Mr. Ramos is entitled to recover the fund. Mr. Ramos is the sole claimant to this property and no other party has asserted ownership to these funds. The total amount Watch Rapport is holding equals the sum of Mr. Ramos' down payment for the first watch and full payment for the second watch. SUF No. 13. Mr. Ramos wired his down payment of $9,608.66 for the first watch and subsequently wired an additional payment of $57,000 a few days later for full payment of the second watch, which totals $66,608.66. SUF Nos. 13, 15. Watch Rapport has failed to identify any other colorable claimants and only identifies Mr. Ramos as claiming an entitlement to the property. SUF Nos. 32, 33.

**DEFENDANT RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

The subject funds have never been frozen by any entity, nor claimed by any other person besides Mr. Ramos. SUF Nos. 13, 15. Watch Rapport concedes in its Complaint that the stake is not the same funds that were frozen and later cleared by OFAC. SUF No. 30. In any event, even though the subject funds were not subject to an OFAC hold, Mr. Ramos nonetheless verified his identity with OFAC and sent Watch Rapport confirmation of OFAC's approval of his license application. SUF Nos. 23, 24, 25.

In sum, summary judgment should be granted regarding the interpleader cause of action because there is no genuine dispute of material facts as to Mr. Ramos' entitlement to the immediate return of his funds.

## B. Mr. Ramos is Entitled to Summary Judgment Regarding Watch Rapport's Violation of the Consumer Legal Remedies Act.

The California Consumer Legal Remedies Act protects consumers against unfair and deceptive business practices and provides efficient and economical procedures to secure such protection. *Asghari v. Volkswagen Group of America, Inc.*, 42 F.Supp.3d 1306 (C.D. Cal. 2013). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770; *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) (examining whether business practices are deceptive or misleading under the CLRA). To successfully bring a claim under the California CLRA, a plaintiff must demonstrate that: (1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 885 (N.D. Cal. 2016).

### 1. Watch Rapport Violated CLRA § 1770(a)(14).

CLRA §1770(a)(14) prohibits a business practice that "Represent[s] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve." Cal. Civ. Code § 1770(a)(14). Here, at multiple locations on its

website, Watch Rapport offers a refund policy if the transaction is unfulfilled or the transaction is cancelled, voluntary or otherwise, or due to shipping or time frames. SUF Nos. 2, 6. Watch Rapport's Returns Frequently Asked Questions reads as follows: "If we cannot fulfill your order, we will either cancel your order and provide a full immediate refund, or provide a refund and leave the transaction open until we can find a replacement." SUF No. 7.

Here, upon Mr. Ramos' purchase of a watch from the Plaintiff, he was given the right to have his money returned to him if the order was not fulfilled by Watch Rapport. Mr. Ramos had never placed an order through the Plaintiff prior to the subject purchases but he selected this particular retailer in large part because of its buyer protection and money-back guarantee. By its own policies, Watch Rapport advertised that it would comply with its own refund terms to immediately return a buyer's funds, even by the buyer's voluntary election. SUF Nos. 2, 8. Mr. Ramos placed the two watch orders and paid Watch Rapport a total of $66,608.66 by two wire transfers, yet Watch Rapport has continued to withhold his funds even after Mr. Ramos requested a refund.

To determine whether a business practice is deceptive or misleading in the context of a CLRA claim, California law utilizes the "reasonable consumer test" to evaluate the business' practices. *Moore*, 966 F.3d at 1017. In particular, a plaintiff must show that "members of the public are likely to be deceived [by the practice]." *Moore*, 966 F.3d at 1017; *Asghari*, 42 F. Supp. 3d at 1314 (finding conduct that is likely to mislead a reasonable consumer violates the CLRA). The Court defines a reasonable consumer as an "'ordinary consumer acting reasonably under the circumstances,' who 'is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'" *Asghari*, 42 F. Supp. 3d at 1314; *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 149 (2010), *as modified on denial of reh'g* (Feb. 8, 2010)

(holding that the reasonable person test analyzes whether a person would attach importance to its existence or nonexistence) (internal quotation marks omitted).

Here, a reasonable consumer is likely to be deceived by Watch Rapport's buyer protection terms because the money back guarantee is advertised in a way to minimize buyers' risk aversion and incentivize them to purchase watches through Watch Rapport's website. Under these facts, a reasonable buyer's fears would likely be quelled by having the assurance that he would be able to get his money back in a timely manner if the transaction could not be completed or by his election.

Therefore, Watch Rapport's conduct qualifies as a deceptive business practice because a reasonable consumer, here Mr. Ramos, would expect that he would receive his money back in a timely manner when requesting a refund within its buyer protection policy. Watch Rapport utilizes a buyer protection guarantee to entice potential consumers complete a transaction yet has refused to honor its policy when it is asserted by the buyer. As of the date of this motion, Mr. Ramos still has not been provided with tracking numbers for either of the watches he ordered from Watch Rapport over a year ago. Thus, Mr. Ramos relied on the validity of the money back guarantee policy when selecting a watch retailer, he is entitled to a refund because he requested his money be returned to him during the yearlong (and still ongoing) processing period, Watch Rapport breached its refund policy by failing to refund Mr. Ramos' payments totaling $66,608.66 despite its policy to do so, and finally, Mr. Ramos was harmed by Watch Rapport's unlawful business practice.

Moreover, despite Mr. Ramos' efforts, Watch Rapport has obstructed Mr. Ramos' efforts to obtain his lawfully purchased watches – or receive a refund of his funds -- by misapplying its OFAC policy. Watch Rapport assured him that the transaction would be completed if Mr. Ramos verified his identity with OFAC that he was not the same person on the Specially Designated Nationals and Blocked

**DEFENDANT RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Persons list. In particular, in its January 29, 2021 email to Mr. Ramos, Watch Rapport stated: "We spoke to our bank and we have finally located the transaction. We need to verify some additional information to continue processing the transaction for compliance purposes." SUF No. 17. Mr. Ramos further relied on Watch Rapport's promises and obtained a release from OFAC. He thereafter notified Watch Rapport of his clearance - yet his transaction was still not completed. A reasonable consumer completing transaction-specific steps from a retailer's customer service department would reasonably assume that completing these steps would allow for the consummation of the transaction, but Watch Rapport, once again, did not provide Mr. Ramos with the watches or refund even after he completed the requested steps. Additionally, Watch Rapport's should not have been applied in the first place, given that the funds it is holding were never frozen by OFAC.

Watch Rapport, by its own admission, has failed to supply Mr. Ramos with the two watches he ordered and has repeatedly refused to honor its money-back guarantee. Further, Watch Rapport has not honored its promise to "rectify" the situation contingent on Mr. Ramos obtaining a release from OFAC. Under these facts, there is an absence of a genuine issue of material fact regarding the Plaintiff's unlawful business practice and Mr. Ramos' good-faith reliance on Watch Rapport's money-back guarantee. As a result, no reasonable jury could find for Watch Rapport and the Defendant asks this Court to enter a judgment in favor of Mr. Ramos regarding § 1770(a)(14) of the CLRA.

## 2. Watch Rapport Violated CLRA § 1770(a)(19).

A business may also violate the CLRA by inserting an unconscionable provision in a consumer contract. Cal. Civ. Code § 1770(a)(19); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1001 (N.D. Cal. 2011) (finding that a showing of unconscionability is a sliding scale between procedural and substantive unconscionability). California courts have construed provisions as substantively

unconscionable if it contains terms that are "unreasonably favorable to the more powerful party" and uses the standard that the provision be "overly harsh," "unduly oppressive," or "shock[s] the conscience." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017). Procedural unconscionability, on the other hand, focuses on the inequality of bargaining power between parties. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (finding that procedural unconscionability results in no real negotiation and lack of meaningful choice.)

Here, as Watch Rapport concedes in its Complaint, after wrongfully withholding Mr. Ramos' funds, and not giving him the watches he purchased, Watch Rapport demanded that he sign a release of liability before returning his funds. SUF No. 35. Watch Rapport's release of liability unfairly subjects Mr. Ramos to procedural unconscionability because Watch Rapport has substantial bargaining power over Mr. Ramos as it is the party controlling his funds. This essentially left Mr. Ramos with a lack of meaningful choice to sign the release in order to recover his funds despite Watch Rapport's advertising of no-hassle refunds. *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1153 (N.D. Cal. 2021) (finding that contracts of adhesion often prove procedural unconscionability under CLRA § 1770(a)(19) if a party lacks a meaningful choice in the matter). Further, there is nothing in Watch Rapport's return policy that predicates the return of a customer's funds on signing a general release of claims, and requiring a consumer to do so is unconscionable where the customer simply seeks a return of their own funds. These facts also demonstrate substantive unconscionability since the release of liability is unduly harsh and one-sided to Watch Rapport.

Watch Rapport's terms and conditions address its processes for dealing with order fulfillment and refunds, but the company has simply ignored its own policies and withheld Mr. Ramos' funds for more than a full year. Not only are these provisions unreasonably favorable to Watch Rapport, as it holds both Mr. Ramos money and purchased watches, but has improperly required Mr. Ramos to obtain

written releases from third parties as a prerequisite to being issued his refund.

### 3. Watch Rapport Violated CLRA § 1770(a)(5).

Under § 1770(a)(5) of the CLRA, a business is in violation of unlawful business practices if it "represent[s] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5); *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211BZ, 2009 WL 2031765, at 3 (N.D. Cal. July 7, 2009), *as amended* (July 30, 2009) (holding that a claim under CLRA § 1770(a)(5) must show that an omission is contrary to a seller's representation). As discussed above, Watch Rapport represented both through its online advertising and to Mr. Ramos directly that its company has a comprehensive buyer protection and return policy. As of the date of this motion, Watch Rapport continues to market its services with this guarantee. However, Watch Rapport has repeatedly refused to honor this guarantee and Mr. Ramos can only surmise that Watch Rapport either advertised the watch with no intent to sell it or misrepresented its ability to obtain the watch due to its insufficient or non-existent contacts with the watch's owner.

Consequently, Mr. Ramos was exposed and thereafter relied on Watch Rapport's deceptive advertising of its buyer protection and return policy. As a result of Watch Rapport's representation of its terms, Mr. Ramos was harmed in the amount of $66,608.66 by this deceptive practice. Therefore, the Defendant asks this Court to enter a judgment in favor of Mr. Ramos under § 1770(a)(5) of the CLRA.

### 4. Mr. Ramos is Entitled to Attorney's Fees under California's Consumer Legal Remedies Act.

A plaintiff may be entitled to attorney's fees in connection with a suit under the CLRA after certain procedural safeguards have been exhausted. Under California Civil Code § 1782(b), "no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other

remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." Cal. Civ. Code § 1782(b); *Gonzales v. CarMax Auto Superstores, LLC*, 845 F.3d 916, 917–18 (9th Cir. 2017). The California Court of Appeal has also held that "[a]ttorney fees are not recoverable in actions for damages under the CLRA unless the response to the notice letter is not an appropriate one or no response is forthcoming within the statutory time period." *Benson v. S. Cal. Auto Sales Inc.*, 239 Cal.App.4th 1198 (2015) (finding that attorney's fees are recoverable in a CLRA action for damages if a seller does not offer appropriate action in response to a consumer's notice).

In this case, Mr. Ramos notified Watch Rapport of his intention to seek CLRA relief on December 7, 2021 via electronic and certified mail. However, despite Mr. Ramos' attempts to resolve this dispute amicably, Watch Rapport ignored Defendant's CLRA letter. This notice gave Watch Rapport ample opportunity to rectify the situation with Mr. Ramos far beyond the 30-day statutory period and before the filing of this Counterclaim, as required by Cal. Civ. Code § 1782.

Under the CLRA, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff in litigation." Cal. Civ. Code § 1780(e). As detailed in the Declaration of Michael C. Douglass, as of the filing of this motion, Mr. Ramos has incurred attorney's fees and costs in the amount of $34,682.50. Mr. Ramos requests an award in the amount of $34,682.50 pursuant to Section 1780(e).

## V.  CONCLUSION

For the reasons stated above, Mr. Ramos requests that this Court issue an order directing Watch Rapport immediately refund Mr. Ramos' $66,608.66, given that it has been unjustifiably holding the funds since late 2020. Additionally, as the facts clearly demonstrate, there is no reason why Watch Rapport has been holding Mr. Ramos' funds since 2020. Rather than simply refund his money, Watch Rapport first sought to pressure him into signing a release of claims and, later,

1   further ratcheted up the pressure by instituting this lawsuit. The Court should not

2   countenance this behavior and should grant the subject motion in its entirety.

3   Dated:        May 11, 2022

4

5                                            LYDECKER LLP

6                                            By:

7                                            Michael C. Douglass
                                             Megan T. Ortiz
8                                            Attorneys for Defendant/Counter-Claimant,
                                             MANUEL RAMOS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT RAMOS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**