Michael C. Douglass (SBN 208442)
*mcd@lydecker.com*
Megan T. Ortiz (SBN 340417)
*mto@lydecker.com*
**LYDECKER LLP**
Mailing Address:
1221 Brickell Ave., 19th Floor
Miami, Florida 33131
Street Address:
445 S. Figueroa St., Suite 3100
Los Angeles, CA 90071
Telephone:(213) 314-0126
Facsimile: (213) 293-4425

Attorneys for Defendant,
MANUEL RAMOS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

WATCH RAPPORT, LLC,

Plaintiff,

v.

MANUEL RAMOS, DOES 1-20, INCLUSIVE,

Defendants.

---

MANUEL RAMOS,

Counter-Claimant,

v.

WATCH RAPPORT, LLC.

Counter-Defendant.

Case No: 2:21-CV-06395-DSF-AS

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1**

**Date:** June 27, 2022
**Time:** 1:30 p.m.
**Judge**: Hon. Daniel S. Fischer
**Courtroom:** 7C

Pursuant to Local Rule 56-1, Defendant and Counter-Claimant MANUEL RAMOS files the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment.

1

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

## Statement of Uncontroverted Facts

| Undisputed Material Fact | Source |
|---|---|
| 1. Watch Rapport is an online seller of high-end and luxury watches. According to its website, an online consumer selects the watch he wishes to purchase and after tendering payment, Watch Rapport then sources the watch to send to the consumer. | Declaration of Megan T. Ortiz, ¶ 8. |
| 2. Watch Rapport's Refund and Return Policy dictates:<br><br>Refunds:<br><br>"Due to the nature of the inspection process, please be advised that approval generally takes up to 10 days. Once approved, your request for a refund will be promptly processed. All returns will be charged a 10% restocking fee, except if your return is because the item was:<br><br>Below are the list of options that are qualified for refunds and void any restocking fees.<br><br>Eligible Refunds:<br>• Not as described<br>• Damaged<br>• Replica or fake<br>• Unfulfilled transaction (terms may apply)<br>• Voluntary cancellation<br>• Transaction cancellation<br>• Failed inspection<br>• Item availability<br>• Shipping & delivery time frames" | Declaration of Megan T. Ortiz, ¶ 2. |

| | |
|---|---|
| 3. Refund Terms, Order Cancellation:<br><br>"All orders that are cancelled or cannot be fulfilled will result in a refund." | Declaration of Megan T. Ortiz, ¶ 3. |
| 4. Refund Terms, Refund Processing:<br><br>"Refunds are usually processed within 24-48 hours by Watch Rapport. Depending on your financial institution and whether the refund will be initiated domestically or internationally, it may take up to 10 business days (Not including weekends or bank holidays) to credit to your account or appear on your statement. Refunds are usually returned to the original payment method with the exception of Cryptocurrency payments. Any Cryptocurrency payments, or ("Coinbase Payments") will be refunded only via bank wire transfer." | Declaration of Megan T. Ortiz, ¶ 4. |
| 5. Watch Rapport's Wire Transfer Recall, Processing Transfer Request, as it relates to its compliance with the United States Treasury's Office of Foreign Assets Control ("OFAC"), reads in pertinent part (erroneously listed as Wire Transfer Agreement in Complaint):<br><br>"Watch Rapport will comply with the US Treasury's Office of Foreign Assets Control (OFAC). If any transfer request is to an entity or individual listed on OFAC's list of Specially Designated Nationals and Blocked Persons, by law, Watch Rapport shall not complete the transfer and shall "block or hold" the funds until such time OFAC issues a written release to Watch Rapport. It is the sole responsibility of the Customer to contact OFAC to obtain a valid written release. The Customer understands and agrees that if a written release is not provided, Watch Rapport or the original receiving financial institution reserves the right | Complaint, ¶ 11. |

3

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

| | |
|---|---|
| to hold or block funds until the matter is resolved." | |
| 6. Watch Rapport's Transaction Disclaimers dictates:<br><br>"Any transaction that cannot be fulfilled is covered by our refund policy and money-back-guarantee." | Declaration of Megan T. Ortiz, ¶ 5. |
| 7. Watch Rapport's consumer Returns Frequently Asked Questions dictates:<br><br>"If we cannot fulfill your order, we will either cancel your order and provide a full immediate refund, or provide a refund and leave the transaction open until we can find a replacement." | Declaration of Megan T. Ortiz, ¶ 6. |
| 8. Watch Rapport's Simple Refund Process, Money-Back-Guarantee dictates:<br><br>"You can start a return or request a refund anytime during your order processing if you have no been provided with tracking information or proof of transit." | Declaration of Megan T. Ortiz, ¶ 7. |
| 9. Mr. Ramos first became aware of Watch Rapport's products and services through an internet search for high-end watch retailers. | Declaration of Manuel Ramos Decl., ¶ 7. |
| 10. Given the significant expenses of high-end watches, Mr. Ramos was very concerned with Watch Rapport's refund and return policy. He read the policy and it was a major inducement to his decision to purchase expensive watches with Watch Rapport. | Declaration of Manuel Ramos Decl., ¶ 8. |
| 11. On October 21, 2020, via Watch Rapport's website, Mr. Ramos placed Order #1616 for a Rolex Chronograph Pre-Daytona 6238 watch (the "Daytona 6238") from Watch Rapport and agreed to pay $38,434.66. | Declaration of Manuel Ramos Decl., ¶ 9. |
| 12. In an e-mail to Mr. Ramos confirming the order and stating that | Declaration of Manuel Ramos Decl., ¶ 10. |

| | |
|---|---|
| he chose the Layaway program with an initial down payment due of $9,608.66, Watch Rapport stated, "If WE cancel your order, you will receive a refund for all the payments you made towards your purchase in full." | |
| 13. On October 27, 2020, Mr. Ramos wired his down payment of $9,608.66 to Watch Rapport toward the purchase price of the Daytona 6238. | Declaration of Manuel Ramos Decl., ¶ 11. |
| 14. On October 31, 2020, via Watch Rapport's website, Mr. Ramos placed a second order, Order #1674, for a Rolex UNIQUE Daytona 6262 Sigma O-T-Swiss-T-O watch (the "Daytona 6262") from Watch Rapport. | Declaration of Manuel Ramos Decl., ¶ 12. |
| 15. On November 5, 2020, Mr. Ramos wired $57,000 to Watch Rapport as full payment for the Daytona 6262. | Declaration of Manuel Ramos Decl., ¶ 13. |
| 16. On December 9, 2020, Mr. Ramos wired $29,226.20 to Watch Rapport representing the balance of the purchase price owed on first watch he purchased -- the Daytona 6238. | Declaration of Manuel Ramos Decl., ¶ 14. |
| 17. On January 29, 2021, Watch Rapport e-mailed Mr. Ramos and informed him that it needed additional identification documents to process his transaction, specifically two forms of valid identification and proof of current valid address. | Declaration of Manuel Ramos Decl., ¶ 15. |
| 18. On January 31, 2021, Mr. Ramos e-mailed the requested identification documents: (1) a copy of his passport, (2) a copy of his Dominican Republic government-issued identification, and (3) a copy of his utility bill. | Declaration of Manuel Ramos Decl., ¶ 16. |
| 19. After more back and forth e-mails regarding Mr. Ramos's bank accounts, on February 2, 2021, Watch Rapport e-mailed him and | Declaration of Manuel Ramos Decl., ¶ 17. |

5

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

| | |
|---|---|
| said that his funds, regarding the first transaction, were being held by OFAC at the receiving bank. | |
| 20. He was told to contact OFAC directly to find out the status and the reason. | Declaration of Manuel Ramos Decl., ¶ 17. |
| 21. Upon further investigation, Mr. Ramos learned that the $29,226.20 wire transfer was frozen by OFAC and that further attention to that transaction would be required. Importantly, neither the initial down payment for the Daytona 6238 ($9,608.66) nor the full payment for the Daytona 6262 ($57,000) wire transfers were blocked; rather, those funds were issued to Watch Rapport and received in its bank account. | Declaration of Manuel Ramos Decl., ¶ 5. |
| 22. On March 16, 2021, Mr. Ramos applied to OFAC for the release of the $29,226.20, and e-mailed Watch Rapport to advise that he had done so. | Declaration of Manuel Ramos Decl., ¶ 18. |
| 23. Two days later, on March 18, 2021, OFAC e-mailed its acknowledgment of receipt of Mr. Ramos' application for the license. | Declaration of Manuel Ramos Decl., ¶ 19. |
| 24. On March 26, 2021, ten days after Mr. Ramos submitted his OFAC license application, Bank of America released the $29,226.20 wire transfer that OFAC had frozen and it was returned to Mr. Ramos' account. | Declaration of Manuel Ramos Decl., ¶ 21. |
| 25. On March 26, 2021, Mr. Ramos emailed Watch Rapport that Bank of America returned the $29,226.20 wire transfer to his account after receiving confirmation of OFAC's approval of my license. | Declaration of Manuel Ramos Decl., ¶ 22. |
| 26. As of this date, OFAC's website confirms that Mr. Ramos' application for the license was "APPROVED". | Declaration of Manuel Ramos Decl., ¶ 20. |
| 27. As of this date, Watch Rapport has not returned Mr. Ramos' | Declaration of Manuel Ramos Decl., ¶ 23. |

| | |
|---|---|
| payments or provided him with either of the watches he purchased. | |
| 28. Watch Rapport's Complaint reads in pertinent part:<br><br>"This Court has diversity jurisdiction pursuant to United States Code § § 1332, 1335 and subject matter of PLAINTIFFS state claim arising out of California's common law pursuant to 28 U.S.C 1331, et. seq. for supplemental jurisdiction under the Declaratory Judgment Act." | Complaint, ¶ 1. |
| 29. Watch Rapport's Complaint reads in pertinent part:<br><br>"WATCH RAPPORT, LLC is a Nevada Limited Liability Company located in Los Angeles, California and does business in this District." | Complaint, ¶ 3. |
| 30. Watch Rapport's Complaint reads in pertinent part:<br><br>"PLAINTIFF seeks a declaratory judgment from the Court as to each and every alleged cause of action in this Complaint and all DEFENDANTS have violated multiple California and federal laws." | Complaint, ¶ 19. |
| 31. Watch Rapport's Complaint reads in pertinent part:<br><br>"PLAINTIFF is requesting that the Court enter an order to have custody of all cash proceeds in connection with its service agreement pursuant to 28 U.S Code § 1335." | Complaint, ¶ 25. |
| 32. Watch Rapport's Complaint reads in pertinent part:<br><br>"PLAINTIFF alleges that there exists a conflicting claim between the parties in the amount of $500.00 or more that is adverse to an independent of one another." | Complaint, ¶ 26. |
| 33. Watch Rapport's Complaint reads in pertinent part:<br><br>"PLAINTIFF is in possession of | Complaint, ¶ 27. |

| | |
|---|---|
| $66,608.66 ("Property") and DEFENDANT claims an entitlement to the property." | |
| 34. Watch Rapport's Complaint reads in pertinent part:<br><br>"PLAINTIFF requests an Order that the DEFENDANT be required to interplead and settle their rights to the property and that the PLAINTIFF be discharged from all liability." | Complaint, ¶ 30. |
| 35. Watch Rapport demanded that Manuel Ramos sign a release of liability before returning his funds. | Complaint, ¶13 (erroneously mislabeled as ¶11). |

8

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

## Proposed Conclusions of Law

The Court must now determine whether Mr. Ramos has proven his case for Rule 22 Interpleader and relief under CLRA provisions 1770(a)(14), 1770(a)(19), and 1770(a)(5).

### 1. INTERPLEADER CAUSE OF ACTION.

A. An interpleader action involves two stages. *Lee v. West Coast Life Insurance*, 688 F.3d 1004, 1014 (9th Cir. 2012).

B. In the first stage, the Court examines the propriety of interpleader in the current action. *In re 1563 28th Ave., San Francisco, CA 94112*, 333 F.R.D. 630, 635. (N.D. Cal. 2019). At this stage, the Court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. *Lee v. West Coast Life Insurance*, 688 F.3d 1004, 1014 (9th Cir. 2012).

C. Manuel Ramos' attempted to purchase two watches via the Watch Rapport website in late 2020. Mr. Ramos' payments totaled $66,608.66, yet he was never given him the watches he purchased or returned his funds.

D. It is undisputed that Mr. Ramos has never received either of the watches he purchased.

E. Statutory Interpleader requires that: (1) at least two claimants are diverse from each other, regardless of the interpleader plaintiff's citizenship; (2) the amount at issue is $500 or more; and (3) the plaintiff must deposit the property in question with the court. 28 U.S.C. § 1335(a)(1); *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).

F. Rule 22 interpleader claims brought under diversity jurisdiction require that: (1) the interpleader plaintiff be diverse from all claimants, although the claimants do not need to be diverse from one another; and (2) satisfaction of the amount in controversy requirement. 28 U.S.C. § 1332.

G. Watch Rapport failed to satisfy the Statutory Interpleader requirement that there be two diverse claimants to the stake and failed to satisfy the jurisdictional requirement of depositing the disputed funds with the Court.

H. The Court is empowered to make a determination about the propriety of an interpleader action under either rule or statutory interpleader, even if the plaintiff has alleged interpleader under the incorrect provision. *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 247 (4th Cir. 2021).

I. Even though Statutory Interpleader is inapplicable under these facts, Mr. Ramos requests that this Court evaluate the merits of interpleader under Rule 22 interpleader rather than §1335.

J. Diversity jurisdiction is satisfied in this case because there is complete diversity between the parties: Watch Rapport (Nevada) and Manuel Ramos (Florida and the Dominican Republic). (*see* Complaint, ¶ 3; Declaration of Manuel Ramos, ¶ 2). The sum of Watch Rapport's breach of contract and

9

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

interpleader causes of action also exceed the amount in controversy requirement for federal diversity jurisdiction. (*See* Complaint, ¶ 1).

K. During the second stage of an interpleader action, the Court determines the respective rights of the claimants to a stake. *United California Bank v. Fadel*, 482 F. 2d 274, 275 (9th Cir. 1973).

L. Mr. Ramos is the sole claimant to this property and no other party has asserted ownership to these funds. The total amount Watch Rapport is holding equals the sum of Mr. Ramos' down payment for the first watch and full payment for the second watch. (*See* Declaration of Manuel Ramos, ¶ 11, 13).

M. The subject funds have never been frozen by any entity, nor claimed by any other person besides Mr. Ramos. (*See* Declaration of Manuel Ramos, ¶¶ 11, 13).

N. Accordingly, Manuel Ramos has satisfied the requirements of Rule 22 Interpleader and he is entitled to summary judgment on his Interpleader cause of action.

**2. WATCH RAPPORT'S VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT.**

A. The California Consumer Legal Remedies Act ("CLRA") protects consumers against unfair and deceptive business practices and provides efficient and economical procedures to secure such protection. Cal. Civ. Code § 1770; *Asghari v. Volkswagen Group of America, Inc.*, 42 F.Supp.3d 1306 (C.D. Cal. 2013).

B. To successfully bring a claim under the California CLRA, a plaintiff must demonstrate that: (1) a consumer is exposed to an unlawful business practice, and (2) the consumer is damaged by the unlawful practice. *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 885 (N.D. Cal. 2016).

C. To determine whether a business practice is deceptive or misleading in the context of a CLRA claim, California law utilizes the "reasonable consumer test" to evaluate the business' practices. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020). In particular, a plaintiff must show that "members of the public are likely to be deceived [by the practice]." *Moore*, 966 F.3d at 1017; *Asghari*, 42 F. Supp. 3d at 1314 (finding conduct that is likely to mislead a reasonable consumer violates the CLRA).

***I. Watch Rapport Violated CLRA § 1770(a)(14).***

1) CLRA §1770(a)(14) prohibits a business practice that "Represent[s] that a transaction confers or involves rights, remedies, or obligations that it does not have or involve." Cal. Civ. Code § 1770(a)(14).

2) Watch Rapport offers a refund policy if the transaction is unfulfilled or the transaction is cancelled, voluntary or otherwise, or due to shipping or time frames. (see Declaration of Megan T. Ortiz, ¶¶ 2, 5).

3) Watch Rapport's Returns Frequently Asked Questions reads as follows: "If we cannot fulfill your order, we will either cancel your order and

provide a full immediate refund, or provide a refund and leave the transaction open until we can find a replacement." (see Declaration of Megan T. Ortiz, ¶ 6).

4) By its own policies, Watch Rapport advertised that it would comply with its own refund terms to immediately return a buyer's funds, even by the buyer's voluntary election. (see Declaration of Megan T. Ortiz, ¶¶ 2, 7).

5) Mr. Ramos placed the two watch orders and paid Watch Rapport a total of $66,608.66 by two wire transfers, yet Watch Rapport has continued to withhold his funds even after Mr. Ramos requested a refund.

6) Mr. Ramos had never placed an order through the Plaintiff prior to the subject purchases but he selected this particular retailer in large part because of its buyer protection and money-back guarantee.

7) A reasonable consumer is likely to be deceived by Watch Rapport's buyer protection terms because the money back guarantee is advertised in a way to minimize buyers' risk aversion and incentivize them to purchase watches through Watch Rapport's website.

8) Therefore, Watch Rapport's conduct qualifies as a deceptive business practice because a reasonable consumer, here Mr. Ramos, would expect that he would receive his money back in a timely manner when requesting a refund within its buyer protection policy. Watch Rapport utilizes a buyer protection guarantee to entice potential consumers complete a transaction yet has refused to honor its policy when it is asserted by the buyer.

9) Watch Rapport assured him that the transaction would be completed if Mr. Ramos verified his identity with OFAC that he was not the same person on the Specially Designated Nationals and Blocked Persons list. In particular, in its January 29, 2021 email to Mr. Ramos, Watch Rapport stated: "We spoke to our bank and we have finally located the transaction. We need to verify some additional information to continue processing the transaction for compliance purposes." (see Declaration of Manuel Ramos, ¶ 15).

10) Mr. Ramos further relied on Watch Rapport's promises and obtained a release from OFAC. He thereafter notified Watch Rapport of his clearance - yet his transaction was still not completed.

11) Accordingly, Defendant asks this Court to enter a judgment in favor of Mr. Ramos regarding § 1770(a)(14) of the CLRA.

### *II. Watch Rapport Violated CLRA § 1770(a)(19).*

1) A business may also violate the CLRA by inserting an unconscionable provision in a consumer contract. Cal. Civ. Code § 1770(a)(19); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1001 (N.D. Cal. 2011) (finding that a showing of unconscionability is a sliding scale between procedural and substantive unconscionability).

///

///

11

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

2) California courts have construed provisions as substantively unconscionable if it contains terms that are "unreasonably favorable to the more powerful party" and uses the standard that the provision be "overly harsh," "unduly oppressive," or "shock[s] the conscience." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017).

3) Procedural unconscionability, on the other hand, focuses on the inequality of bargaining power between parties. *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (finding that procedural unconscionability results in no real negotiation and lack of meaningful choice).

4) Watch Rapport concedes in its Complaint, after wrongfully withholding Mr. Ramos' funds and not giving him the watches he purchased, that Watch Rapport demanded that Mr. Ramos sign a release of liability before returning his funds. (*See* Complaint, ¶13 (erroneously mislabeled as ¶11)).

5) Watch Rapport's release of liability unfairly subjects Mr. Ramos to procedural unconscionability because Watch Rapport has substantial bargaining power over Mr. Ramos as it is the party controlling his funds.

6) This essentially left Mr. Ramos with a lack of meaningful choice to sign the release in order to recover his funds despite Watch Rapport's advertising of no-hassle refunds. *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1153 (N.D. Cal. 2021) (finding that contracts of adhesion often prove procedural unconscionability under CLRA § 1770(a)(19) if a party lacks a meaningful choice in the matter).

7) Requiring a consumer to sign a release of claims where the customer simply seeks a return of their own funds demonstrates substantive unconscionability since the release of liability is unduly harsh and one-sided to Watch Rapport.

8) Accordingly, Defendant asks this Court to enter a judgment in favor of Mr. Ramos regarding § 1770(a)(19) of the CLRA.

## *III. Watch Rapport Violated CLRA § 1770(a)(5).*

1) Under § 1770(a)(5) of the CLRA, a business is in violation of unlawful business practices if it "represent[s] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5); *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211BZ, 2009 WL 2031765, at 3 (N.D. Cal. July 7, 2009), *as amended* (July 30, 2009) (holding that a claim under CLRA § 1770(a)(5) must show that an omission is contrary to a seller's representation).

2) Watch Rapport represented both through its online advertising and to Mr. Ramos directly that its company has a comprehensive buyer protection and return policy.

3) Watch Rapport has repeatedly refused to honor this guarantee by failing to provide Mr. Ramos with the watches he purchased or a return of his funds.

12

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56-1

4) Mr. Ramos was harmed in the amount of $66,608.66 by this deceptive practice.

5) Accordingly, Defendant asks this Court to enter a judgment in favor of Mr. Ramos regarding § 1770(a)(5) of the CLRA.

Dated: May 11, 2022

**LYDECKER LLP**

By: [signature]

Michael C. Douglass
Megan T. Ortiz
Attorneys for Defendant,
MANUEL RAMOS